UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
RANDALL KNIGHT,                                          :
                                                        :
                              Plaintiff,                :        17-cv-958
                                                        :
        -against-                                       :        **<u>COMPLAINT</u>**
                                                        :
NASSAU COUNTY,                                           :        PLAINTIFF DEMANDS A
                                                        :        TRIAL BY JURY              :
                              Defendant.                :
---------------------------------------------------------------x

Plaintiff, Randall Knight, by and through his attorney, Jeffrey D. Jones of THE JONES LAW

FIRM, alleges, upon knowledge as to himself and his own actions and upon information and belief

as to all other matters, unless otherwise specified, as follows:

<u>**PARTIES**</u>

1.  Plaintiff Randall Knight ("**Plaintiff**" or "**Mr. Knight**") is a natural person and, at all
    relevant times, was and is a resident of the State of New York.  Mr. Knight was and is a
    United States citizen.

2.  Mr. Knight is an African-American/Black male.

3.  Suable Defendant Nassau County, operating through its administrative arm as the Nassau
    Probation Department ("**Defendant**" or "**NPD**"), was acting under color of State law.  At
    all relevant times, NPD, by and through its duly appointed employees, acted and operated
    under color of state law expressly or as "cloaked" by color of state law.

## JURISDICTION AND VENUE

4.  Jurisdiction rests with this court for this civil action brought pursuant to 42 U.S.C. § 1983 to redress the deprivation of the rights, privileges and immunities secured to Plaintiff by the First Amendment to the Constitution of the United States (the "**First Claim: Federal First Amendment Retaliation**").

5.  Jurisdiction rests, in addition, with this court for this civil action brought pursuant to 42 U.S.C. § 1983 to redress the denial of procedural Due Process rights secured to Plaintiff by the Fourteenth Amendment to the Constitution of the United States (the "**Second Claim: Violation of Federal Due Process Clause**").

6.  Jurisdiction rests with this court for this civil action brought pursuant to 42 U.S.C. § 1983 to redress the right of equal protection under the law secured to Plaintiff by the Fourteenth Amendment to the Constitution of the United States (the "**Third Claim: Violation of Equal Protection Clause**").

7.  Jurisdiction rests with this court for this civil action brought pursuant to 42 U.S.C. § 1981 to redress the deprivation of status-based rights, privileges and immunities secured to Plaintiff by Section 1981 (the "**Fourth Claim: Section 1981 Status-Based Discrimination**").

8.  Jurisdiction rests with this court for this civil action brought pursuant to 42 U.S.C. §  1981 to redress the deprivation of protected-activity rights, privileges and immunities secured to Plaintiff by Section 1981 (the "**Fifth Claim: Section 1981 Retaliation**").

9.  Jurisdiction is invoked pursuant to 28 U.S.C. §§ 1331, 1343 and 2201.

10. Venue is proper in this district pursuant to 28 U.S.C. §1391(b) because a substantial portion, if not all, of the acts and omissions occurred in the Eastern District of New York.

11. No other administrative or judicial proceeding is pending with respect to the matters raised herein.

## STATEMENT OF FACTS COMMON TO ALL CLAIMS

12. Mr. Knight was employed as a Department of Probation Officer for NPD from on or around September 11, 2009 until his wrongful and retaliatory termination on or around June 29, 2015.

13. At all relevant times Mr. Knight was fit, qualified, and eager to hold a position at NPD, and he consistently performed his duties—until his wrongful and retaliatory termination— in a professional and competent manner.

14. Mr. Knight's job duties included, *inter alia*, supervising persons convicted of crimes, administering drug tests, telephone consultations, "drive out" visitations, and case file management.

### *The Racial Profiling*

15. In or around June 2015, Mr. Knight and his co-worker were parked in an unmarked blue Crown Victoria car equipped with lights and sirens, and easily identifiable as a law enforcement vehicle to any law enforcement officer with even a few months of training and experience.

16. After five minutes Mr. Knight, the driver of the Crown Victoria, began to drive away to proceed to their destination.

17. Immediately a Long Beach Police Department ("LBPD") officer pulled over Mr. Knight and stated, in substantial form: "I wanted to see what's up, I thought you were undercover."

18. While Mr. Knight and his partner were not, in fact, acting undercover, the LBPD's pretextual explanation for the traffic stop belies common sense because if Mr. Knight were undercover, then the LBPD officer would have blown their undercover status.

19. Incidentally, Mr. Knight is a former New York Police Department officer of twenty-seven (27) years and could immediately discern that, in all likelihood, the LBPD officer was simply profiling and harassing him and his partner.

20. After stopping Mr. Knight and his partner, the LBPD officer could easily see the jacket Mr. Knight was wearing displaying the words "Nassau County Probation."

21. After some verbal back and forth between Mr. Knight and the LBPD officer, and Mr. Knight visibly showing his NPD bullet-proof vest and badge, the LBPD officer permitted Mr. Knight and his partner to proceed with their employment duties.

22. The LBPD officer did ***not*** write or issue a citation or summons to Mr. Knight or his partner because, apart from the abhorrent racial profiling, the entire incident was otherwise much ado about nothing.

23. The LBPD officer did not write or create any contemporaneous report concerning Mr. Knight or his partner because, again, apart from the abhorrent racial profiling, the incident was otherwise much ado about nothing.

### *The Protected Activities*

24. During the drive Mr. Knight immediately complained, in good faith, to his partner about the traffic stop as an example of immoral and improper racial profiling.

25. When Mr. Knight returned to NPD headquarters, he continued to complain, in good faith, about the traffic stop as an example of immoral and improper racial profiling.

26. Later that day, Mr. Knight complained to union representative Marla Roe that the traffic stop was an example of immoral and improper racial profiling.

27. NPD was unequivocally on-notice that Mr. Knight was engaging in statutorily and Constitutionally protected activity in opposing an unjust traffic stop that he suffered

specifically, and speaking against the larger police policy and/or custom of racially profiling as an immoral and improper policy generally.

28. Mr. Knight's protected activities concerned both the incident as it related to him, and the broader implications and public concerns as it related to the policy and/or custom of immoral police profiling of minorities. While complaining about the racial profiling incident, Mr. Knight brought to bear his twenty-seven (27) years of police work to analyze and opine upon the incident, the profiling policy, and the broader implications for society.

29. Indeed, the crux and thrust of Mr. Knight's complaints addressed and concerned broader public policy and public concerns, because at this juncture the only harm he had suffered was a brief traffic stop that had not even resulted in the issuance of a citation or summons. With more than twenty-seven (27) years of experience being a cop, Mr. Knight's concerns were aimed at public concerns.

***The Retaliatory Activation of (constitutionally insufficient) Internal Investigation Procedures***

30. Because of Mr. Knight's complaints of, at the very least, perceived discrimination at the hands of an LBPD office—that resulted in neither a citation nor a summons—the NPD discriminatorily activated its internal investigation procedures.

31. The discriminatory activation and application of an otherwise facially neutral policy can constitute discrimination and/or retaliation.

32. Neither a human resources representative nor an investigator ever contacted Mr. Knight for his version of the events, in violation of clearly established Supreme Court *Due Process* jurisprudence.

33. More specifically and prior to Mr. Knight's wrongful termination, NPD never informed him of the accusations against him, NPD never presented to him the evidence gathered against him, and NPD never requested or allowed Mr. Knight to provide his version of the story and events.

34. Mr. Knight, inquired of his partner, Marta DeVille (who was in the vehicle), what the investigators had asked her concerning the racial profiling traffic stop.

35. Specifically, Mr. Knight said to Marta, in substantial form: "Have you talked with them [the NDP]?"

36. Marta responded, in substantial form: "they [the NDP] were pressuring [to throw Mr. Knight under the proverbial bus]."

37. Mr. Knight responded, in substantial form: "Who [was pressuring you]?"

38. Marta replied, in substantial form: "I don't want to talk about it anymore."  Whereupon Mr. Knight left Marta's area.

39. Unbeknownst to Mr. Knight, the NPD with animus and retaliatory intent was working diligently to trump-up a papertrail against Mr. Knight concerning the traffic stop—the very incident where Mr. Knight was immorally racially profiled and the very incident that, contemporaneously, had not resulted in either the issuance of a citation nor a summons.

40. While failing to even ask Mr. Knight his version of the events, the NPD procured a letter from the head of the Long Beach Police Department that lambasted Mr. Knight as a hot-head who is a threat and danger to himself and others.  The substance of the letter is laughable given the real-world context it was issued within and in light of the fact that no citation or summons was issued.

41. The LBPD deals with weighty and severe allegations of corruption, wrongful arrests, wrongful shootings, wrongful deaths, and complaints of harassment, discrimination and otherwise

improper conduct on a near-daily basis. The notion that a minor traffic stop would be on the proverbial radar of a senior LBPD executive is laughable. The LBPD has bigger fish to fry than a traffic stop with a fellow officer—behind the proverbial blue-line—that did not result in the issuance of a citation or summons.

42. NPD's sham investigation—that failed to request or allow Mr. Knight to share his version of the story and events—resulted in the wrongful and retaliatory termination of Mr. Knight on or around June 25, 2015.

43. At no point in time did the NPD seek Mr. Knight's version of events, and in fact the NPD rejected and rebuffed Mr. Knight's attempts to tell them his version of events.

44. Upon information and belief, Dominic DeMaggio approved the termination.

45. Similarly situated *Officer C.P.* (initials used to protect his identity), a Caucasian/White, was stopped by an LBPD officer for speeding while in the course of performing his employment duties, and *Officer C.P.* was not terminated. Upon information and belief, an internal investigation was not even activated against *Officer C.P.*

46. Similarly situated *Officer J.D.* (initials used to protect his identity), a Caucasian/White, was driving a department vehicle while intoxicated and crashed the vehicle in or around 2009. Officer J.D., upon information and belief, was merely written-up for the incident, but not terminated.

47. Upon information and belief, dozens of other non-black NPD officers are regularly issued citations and summonses while in the course of performing their job duties, no investigation is activated against them, and if an investigation occurs then the non-black officers' version of events is sought and obtained. In addition, said non-black officers are not terminated or discharged.

7

## FIRST CLAIM
(First Amendment Retaliation)

48. Plaintiff incorporates by reference the preceding paragraphs as if fully stated herein.

49. Plaintiff's First Claim is premised upon the substantive provisions and rights enumerated and secured by the First Amendment to the Constitution of the United States, as incorporated and made applicable to the states through the Fourteenth Amendment, and as enforceable as a private cause-of-action under 42 U.S.C. § 1983.

50. The statute of limitations for a Section 1983 claim arising in New York State is three years as borrowed and pursuant to N.Y.C.P.L.R. § 214(5) general or residual personal injury actions.

51. Plaintiff's First Claim accrued when Defendant retaliated against him in or around June 2015 by activating a sham investigation against him and then ultimately and rashly terminating Mr. Knight on or around June 29, 2015.

52. Plaintiff's First Claim is timely filed by more than a year.

53. In addition to the allegations above, Dominic Demaggio retaliated against Mr. Brown by departing from standard department custom by attempting to cause Mr. Knight's license to carry a weapon suspended.

54. In addition to the allegations above, Dominic Demaggio retaliated against Mr. Brown by departing from standard department custom by attempting to challenge and overturn the approval of Mr. Brown's unemployment benefits.

55. As a direct and proximate result of Defendant's intentional or reckless actions, Plaintiff was suspended, transferred, terminated and/or otherwise not allowed to work, and suffered lost wages and benefits, as well as humiliation, inconvenience, mental distress, and embarrassment.

## SECOND CLAIM
### (Violation of Due Process Clause)

56. Plaintiff incorporates by reference all preceding paragraphs as if re-alleged and stated fully herein.

57. Plaintiff's Second Claim is premised upon the substantive provisions and rights enumerated and secured by the Fourteenth Amendment to the Constitution of the United States' Due Process Clause, as incorporated and made applicable to the states through the Fourteenth Amendment, and as enforceable as a private cause-of-action under 42 U.S.C. § 1983.

58. Decades old and well-established Supreme Court jurisprudence indisputably declares that a public employee must be provided, pre-termination, with the opportunity to present reasons, either in person or in writing, why the proposed action (*i.e.*, termination) should not be taken, and the violation thereof is, per se, a violation of the fundamental Due Process requirements.  *Cleveland Bd. of Educ. V. Loudermill*, 470 U.S. 532 (1985).

59. Prior to Mr. Knight's termination, NPD never requested Mr. Knight's side of the story and version of events.

60. Prior to Mr. Knight's termination, NPD never allowed Mr. Knight to share his side of the story, and version of events.

61. Prior to Mr. Knight's termination, NPD actively prevented and refused to hear Mr. Knight's side of the story and version of events.

62. Prior to termination, NPD never provided Mr. Knight with oral or written notice of the charges against him.

63. Prior to termination, NPD never provided an explanation of the employer's evidence against him.

64. Prior to termination, NPD did not allow Mr. Knight an opportunity to respond, in writing or orally, to any of NPD's officers, managers or supervisors, concerning the charges against him.

**THIRD CLAIM**
(Violation of Federal Equal Protection Clause)

65. Plaintiff incorporates by reference all preceding paragraphs as if re-alleged and stated fully herein.

66. Plaintiff's Third Claim is premised upon the substantive provisions and rights enumerated and secured by the Fourteenth Amendment to the Constitution of the United States' Equal Protection Clause, as incorporated and made applicable to the states through the Fourteenth Amendment, and as enforceable as a private cause-of-action under 42 U.S.C. § 1983.

67. Upon information and belief, white Officer C.P. and white Officer J.D., committed violations against NPD Policies and were not investigated, and/or were not terminated.

**FOURTH CLAIM**
(Section 1981 Status-Based Discrimination)

68. Plaintiff incorporates by reference all preceding paragraphs as if re-alleged and stated fully herein.

69. Plaintiff's Fourth Claim is premised upon 42 U.S.C. Section 1981 statutory right to be free to engage in employment to the same extent as white individuals, and as enforceable against state and local government entities.

**FIFTH CLAIM**
(Section 1981 Retaliation)

70. Plaintiff incorporates by reference all preceding paragraphs as if re-alleged and stated fully herein.

71. Plaintiff's Fifth Claim is premised upon 42 U.S.C. Section 1981 statutory right to be free to engage in employment, engage in protected activity, and be free from retaliation, and as enforceable against state and local government entities.

   **WHEREFORE**, Mr. Knight *respectfully* demands judgment against Defendant as follows:

   A.  On his First Claim (**First Amendment Retaliation**), back pay and front pay (or reinstatement) in amounts as yet undetermined (including benefits and wage supplements), compensatory damages and punitive damages to the maximum extent permissible under the law, as determined by a jury but believed to exceed $300,000.00, and reasonable attorneys' fees, interest, and costs;

   B.  On his Second Claim (**Fourteenth Amendment Due Process**), back pay and front pay (or reinstatement) in amounts as yet undetermined (including benefits and wage supplements), compensatory damages and punitive damages to the maximum extent permissible under the law, as determined by a jury but believed to exceed $300,000.00, and reasonable attorneys' fees, interest, and costs;

   C.  On his Third Claim (**Fourteenth Amendment Equal Protection**), back pay and front pay (or reinstatement) in amounts as yet undetermined (including benefits and wage supplements), compensatory damages and punitive damages to the maximum extent permissible under the law, as determined by a jury, and reasonable attorneys' fees, interest, and costs;

   D.  On his Fourth Claim (**Section 1981 Status-Based Discrimination**), back pay and front pay (or reinstatement) in amounts as yet undetermined (including

benefits and wage supplements), compensatory damages and punitive damages to the maximum extent permissible under the law, as determined by a jury, and reasonable attorneys' fees, interest, and costs;

E.  On his Fifth Claim (**Section 1981 Retaliation**), back pay and front pay (or reinstatement) in amounts as yet undetermined (including benefits and wage supplements), compensatory damages, and punitive damages to the maximum extent permissible under the law, as determined by a jury but believed to exceed $300,000.00, and reasonable attorneys' fees, interest, and costs;

F.  That the Court declare Plaintiff a "prevailing party" for attorney fee reimbursement purposes and, upon timely application by Plaintiff's counsel, an award of reasonable attorneys' fees; and,

G.  Such other and further relief as the Court deems just and proper, together with the costs and disbursements of this action.

JURY TRIAL DEMANDED
ATTORNEY'S LIEN CLAIMED

**Dated: NEW YORK, NEW YORK**
**February 20, 2017**

**Respectfully submitted,**

By:  s/ Jeffrey D. Jones
Jeffrey D. Jones, NY #4843363
**THE JONES LAW FIRM**
523 East Pine Place
Tulsa, OK 74106-4301
Phone: (574) 876-4715
JJ@JeffreyJonesLawFirm.com

*Attorney for Plaintiff*